UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 4:06CR00220 SNL (AGF) |
| MICHAEL J. BINNS and | ) | |
| MARY ANN BINNS, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on the pretrial motions filed by Defendants, Michael Binns and Mary Ann Binns. Pretrial matters were referred to the undersigned United States Magistrate Judge under 28 U.S.C. § 636(b). Both Defendants filed motions to dismiss the indictment due to multiplicity. (Doc. Nos. 31 & 32). In addition, Defendant Mary Ann Binns filed motions for the release of *Brady* materials, for the early release of Jencks Act material, and to sever Defendants. (Doc. Nos. 33-35, respectively). Defendant Mary Ann Binns also filed a motion to suppress evidence (Doc. No. 36), which motion was thereafter withdrawn by Defendant. (Doc. No. 38).

A hearing was held on May 23, 2006. The government was represented by Assistant United States Attorney Rosemary C. Meyers. Defendant Michael Binns was present and represented by his attorney, Assistant Federal Public Defender Felicia A. Jones. Defendant Mary Ann Binns was present and represented by her attorney, J.

Christian Goeke. Defendant Mary Ann Binns having withdrawn her motion to suppress, no testimony was presented and the parties provided argument. Defendants were granted leave to file further authority following the hearing, after which time the matter was taken under submission. The trial in this matter is scheduled for August 7, 2006. In light of the matters presented at the hearing, the Court makes the following findings and conclusions of law.

### A. Motion to Dismiss on Grounds of Multiplicity

Both Defendants contend that the indictment should be dismissed on grounds of multiplicity, asserting that Counts I and II charge a single offense in two counts. The Double Jeopardy Clause protects a defendant from "multiple punishments for the same criminal offense." United States v. Bennett, 44 F.3d 1364, 1368 (8th Cir. 1995); accord United States v. Roy, 408 F.3d 484, 491 (8th Cir. 2005) ("An indictment is multiplicitous if it charges a single offense in multiple counts."). The problem with a multiplicitous indictment is that "multiple sentences may result" and "it may suggest to the jury that the defendant committed more than one crime." United States v. Dixon, 921 F.2d 194, 196 (8th Cir. 1990).

"To show a violation of the Double Jeopardy Clause, 'a defendant must prove that the offenses for which he is prosecuted and punished are the same offense in both law and fact.'" United States v. Kehoe, 310 F.3d 579, 587 (8th Cir. 2002) (quoting Bennett, 44 F.3d at 1368). The Eighth Circuit has adopted a two-part test for making this

determination:

> First, a court must ask whether Congress "intended that each violation be a separate offense." . . . If it did not, there is no statutory basis for the two prosecutions, and the double jeopardy inquiry is at an end. . . . Second, if Congress intended separate prosecutions, a court must then determine whether the relevant offenses constitute the "same offense" within the meaning of the Double Jeopardy Clause.

United States v. Christner, 66 F.3d 922, 928 (8th Cir. 1995) (citing Bennett, 44 F.3d at 1373); accord United States v. Allen, 247 F.3d 741, 768 (8th Cir. 2001) (ultimately, dispositive question is "whether Congress clearly intended to impose cumulative sentences for simultaneous violations of each of the statutes"), vacated and remanded for reconsideration on other grounds, 536 U.S. 953 (2002). With regard to the second prong of the test, the Court has explained "[t]he double jeopardy bar applies only to prosecutions or convictions which cannot survive the 'same elements' test." Bennett, 44 F.3d at 1373. As expressed in the leading case of Blockburger v. United States, 284 U.S. 299 (1932), "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." Blockburger, 284 U.S. at 304; accord Christner, 66 F.3d at 928.

As the Court observed in Christner, "[s]tating the rule against multiplicity is a relatively simple proposition; discerning the proper judicial test for implementing the rule is, however, more difficult." Id. at 927. And application of the Blockburger test, which references "two distinct statutory provisions," can be particularly difficult where separate

3

subsections of the same statutory provision are at issue.  See United States v. Hinman, 2005 WL 958395 at *11 (N.D. Iowa 2005).

In this indictment, Count I charges that on or about December 11, 2003, in connection with their bankruptcy proceeding, Defendants knowingly and fraudulently concealed certain enumerated assets, which constituted property of their bankruptcy estate, in violation of 18 U.S.C. § 152(1).  Count II charges that on that same date, in connection with their bankruptcy proceeding, Defendants knowingly and fraudulently made false declarations and statements under penalty of perjury, by failing to disclose on Schedule B of the bankruptcy filings the same enumerated assets, in violation of 18 U.S.C. § 152(3).  18 U.S.C. § 152 in pertinent part provides that a violation occurs with respect to :

> A person who –
>
> (1) knowingly and fraudulently conceals from a custodian, trustee, marshal, or other officer of the court charged with the control or custody of property, or, in connection with a case under title 11, from creditors or the United States Trustee, any property belonging to the estate of a debtor; [or]
> . . .
>
> (3) knowingly and fraudulently makes a false declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, in or in relation to any case under title 11.

The government conceded at the hearing that Counts I and II are based on the exact same conduct; the government charges that Defendants' actions in failing affirmatively to list certain assets on Schedule B constitute both an act of concealment, under subsection 152(1), and a false statement under penalty of perjury, under subsection 152(3), which

the government asserts may be separately punished.[1]

The issue posed by Defendants' motions is a close and difficult one that has led to a split in the circuits. On wholly analogous facts, when faced with the question of whether multiplicity arises from charging a single act under more than one subsection of 18 U.S.C. § 152, the First and Tenth Circuits have found the counts to be multiplicitous, while the Fifth Circuit has found no multiplicity problem. Compare United States v. Montilla Ambrosiani, 610 F.2d 65, 69 (1st Cir. 1979) (finding multiplicity), and United States v. McIntosh, 124 F.3d 1330, 1336-37 (10th Cir. 1997) (finding multiplicity), with United States v. Cluck, 143 F.3d 174, 179 (5th Cir. 1998) (finding no multiplicity).[2]

The Eighth Circuit addressed the very issue posed by Defendants' motions in Christner. Its holding and reasoning, unfortunately, do not make the analysis much simpler, and not surprisingly, it is cited by both the government and Defendants. In Christner, the defendant was charged in Count I of the indictment with concealing

---

[1] It is not enough to assert that the matter may be addressed at the time of sentencing by not assessing additional imprisonment, as this does not address the potential problem of the jury believing that defendants committed two crimes rather than one. Moreover, that Defendants would be assessed the mandatory special assessment of $100 per count constitutes a double punishment. Christner, 66 F.3d at 927.

[2] The matter is arguably further complicated by the fact, as the Eighth Circuit recognized in Bennett, that the circuits are not wholly in agreement as to how the Blockburger test is to be applied: is it applied by looking solely at the elements of the statutes as expressed in the statutory language, or by "going beyond the statute and looking at the underlying facts or averments in the indictment." Bennett, 44 F.3d at 1374 (citing cases). The Court in Bennett did not determine the issue, as it found no double jeopardy violation under either approach. Id.

$25,800, which he transferred into a bank account in his wife's name, and in Count II with concealing $10,231 in proceeds from the sale of cattle, which he deposited into an account in the name of a separate trust, both in violation of 18 U.S.C. § 152(1). Count III charged the defendant, under 18 U.S.C. § 152(3), with making a false statement under penalty of perjury by submitting a monthly report that failed to disclose these same two assets.

In connection with its determination that the counts were not multiplicitous, the Christner Court relied heavily on the fact that the government was not asserting that the acts of concealment in Counts I and II occurred when defendant made the false statements in his monthly report. Rather, the fraudulent concealment occurred when the defendant made the two deposits into the accounts in the names of others, which the Court noted were "separate acts from the false statement charged in Count III." Christner, 66 F.3d at 929-30. It distinguished the First Circuit case of Montilla Ambrosiani on this basis, noting that in Montilla Ambrosiani, the government took the position "that a single nondisclosure in a document filed with the bankruptcy court could support separate charges of both concealment and making a false statement." Id. at 929.

Applying the first prong of the two-part test, the Court in Christner found an intent by Congress to permit separate charges where the concealment and false statements were separate acts.

> Upon careful consideration of the language and structure of § 152, we hold that Congress intended that an act of intentionally concealing property of the bankruptcy estate and the act of knowingly making a false

> statement to the bankruptcy court under penalty of perjury constitute two separate offenses under the statute *where, as in this case, the concealment and the statement were separate acts*, even if the concealment and the statement involved the very same property. Thus, the statutory intent test is met.

66 F.3d at 929 (emphasis added). The Court also found that the same elements test was also met, as the concealment counts under § 152(1) required the government to prove concealment, which the false statement count did not; and the false statement count under § 152(3) required proof of a false statement made under penalty of perjury, which § 152(1) did not. Id.

With regard to the second prong of the test, the Court agrees that the "same elements" test of Blockburger is met. As the Court found in Christner, Count I here requires the government to prove concealment, which Count II does not, and Count II requires the government to prove a false statement under penalty of perjury, which Count I does not. See id. The undersigned notes a further distinction in that a charge under § 152(1) requires a concealment *of property of the estate*, while § 152(3) requires only a false statement under penalty of perjury in or in relation to a case under Title 11 – the false statement need not relate to property of the estate.

The difficulty with respect to the government's position relates to the first prong of the test. In Christner, the Eighth Circuit did not hold that Congress intended the acts of concealment and false statement to support separate offenses under all circumstances, as the Fifth Circuit did in Cluck. See Cluck, 143 F.3d at 179. Rather, the Eighth Circuit limited its holding and found such an intent "where . . . the concealment and the

7

statement were separate acts." Christner, 66 F.3d at 929. Though its further discussion may be viewed as dicta, the Court took great pains to distinguish the facts in Montilla Ambrosiani, a case in which the government, like here, asserted separate charges for concealment and false statements under oath related to the non-disclosure contained in a single document filed with the bankruptcy court. The Court further endorsed the First Circuit's reasoning, stating, "We do not take issue with the First Circuit's reasoning in Montilla Ambrosiani, as it applies to the specific facts of that case." Id.

The facts of this case are indistinguishable from the facts in Montilla Ambrosiani. Here, too, the government seeks to assert separate charges for concealment and false statements based on the failure to make disclosures in a single document. The jury in this case will be asked to determine, in Count I, whether Defendants concealed the enumerated assets by not disclosing them in Schedule B, filed with the bankruptcy court on December 11, 2003. With respect to Count II, the jury will be asked to determine essentially the same thing: whether Defendants made false statements under penalty of perjury by not disclosing the same assets in Schedule B, filed with the bankruptcy court on December 11, 2003. As the court aptly noted in Montilla Ambrosiani, "This is but another name for the same rose." Montilla Ambrosiani, 610 F.2d at 68. Though not free from doubt, the undersigned believes that the language and reasoning of Christner directs a finding that Congress did not intend to permit separate charges under the same statute where, as here, the government relies on a single nondisclosure in a document filed with the bankruptcy court to support both a charge of concealment under § 152(1) and a

8

charge of false statement under § 152(3).

Moreover, it is especially difficult to find such an intent by Congress in this particular context where the bankruptcy statutes and rules, both current and former, impose an affirmative obligation to disclose all assets in verified schedules. While technically chargeable in two subsections of the criminal bankruptcy fraud statute, at issue is but a single duty allegedly breached, namely, the affirmative duty to disclose all assets in a schedule filed under oath. See McIntosh, 124 F.3d at 1336-37 (where obligation was to disclose fee in operating report, multiplicitous to charge both concealment and false statement for non-disclosure in report); cf. Roy, 408 F.3d at 491 (counts alleging assault of federal officer cause bodily injury and assault of federal officer with deadly and dangerous weapon, alternative means of violating 18 U.S.C. §§ 111(a)(1) and (b), held multiplicitous as they are the same offense in law and fact).

In accordance with the reasoning of Christner, the undersigned recommends that the Court find Counts I and II of the indictment to be multiplicitous. As the government correctly notes, however, the remedy for a multiplicitous indictment is not dismissal, but rather to require the government to elect on which count it will proceed. United States v. Feldhacker, 849 F.2d 293, 297-98 n.5 (8th Cir. 1998). Alternatively, the district court may remedy such a violation by submitting an appropriate instruction to the jury, permitting them to find only one such violation. See Roy, 408 F.3d at 491-92.

### B. **Motion for Disclosure of Favorable Evidence** [Doc. No. 33]

Defendant Mary Ann Binns requests that the government be required to disclose to her the names and addresses of all persons interviewed in connection with the case who will not be called as witnesses. She asserts that the obligation for such disclosure arises under Brady v. Maryland, 373 U.S. 83 (1963). Defendant has not suggested to the Court how the names of such persons fall within Brady, except to state that she would like to know who provided the information that led to the charges. Counsel for Defendant Michael Binns – who filed no such motion – suggested Defendants believe it possible that someone at the behest of the government took documents from Defendants' residence without their permission. Counsel for the government affirmatively represented that no such action took place to her knowledge. The government has represented further that it is aware of its obligations under Brady and will comply by producing all favorable evidence.

Defendant has not shown to the Court how the names of all persons interviewed by the government constitute favorable evidence under Brady. The request Defendant makes is outside the scope of Rule 16 of the Federal Rules of Criminal Procedure, as it is well-established that the government is not required in non-capital cases to furnish the names of its witnesses, much less those individuals interviewed whom it does not intend to call as witnesses. See United States v. Hutchings, 751 F.2d 230, 236 (8th Cir. 1984); United States v. White, 750 F.2d 726, 728 (8th Cir. 1984). As such, this motion will be denied.

### C. Motion for Early Disclosure of Jencks Material [Doc. No. 41]

Defendant Mary Ann Binns has filed a motion requesting that the Court order the government to produce Jencks Act materials no less than seven (7) days prior to trial. Defendant further requests that the Court order that the agents preserve their rough interview notes, and that such notes also be made available to Defendant. The government has agreed to produce all Jencks Act materials the Friday prior to trial, and to advise its agents to preserve their rough notes, but does not agree such notes should be provided to Defendant.

18 U.S.C. § 3500(b) provides that after a government witness has testified, the court shall order the government to produce any statement of that witness to the defendant. The government has agreed to do more than is required by making those materials available the Friday before trial. The Court can see no basis for requiring anything more in this instance. The case is not particularly complex, consisting of allegations of the nondisclosure of certain discrete assets about which Defendants presumably already have knowledge. Nor is the volume of documents extensive, consisting of less than one banker's box of documents.

With respect to the request to retain rough notes, the Eighth Circuit has indicated that it is a preferable practice that rough notes be retained, irrespective of whether they might be discoverable by the defendant. See United States v. Leisure, 844 F.2d 1347, 1361 n.10 (8th Cir. 1988); United States v. Hoppe, 645 F.2d 630, 634 n.2 (8th Cir. 1981). The government has agreed to direct such retention.

As such, Defendant's motion with regard to rough notes will be granted insofar as the United States Attorney is ordered to direct the investigating agents to retain any presently existing rough notes made during their investigation of the matters alleged in the indictment – an action the Court presumes counsel has already taken. The motion will be denied insofar as Defendant requests that the notes be provided to her. If such notes constitute material required to be produced pursuant to 18 U.S.C. § 3500 or Rule 26.2 of the Federal Rules of Criminal Procedure, Defendant may request their production at the time of trial.

### D. **Motion to Sever Defendants** [Doc. No. 35]

Defendant Mary Ann Binns has filed a motion to sever her charges from those against her husband. She asserts that a jury cannot make a reliable judgment in a joint trial, because co-Defendant Michael Binns is charged is Count III, while she is not; she and her husband have vastly different degrees of culpability; and he is charged with testifying falsely under oath, while she is not. Defendant further asserts that her right to testify may be circumscribed in a joint trial with her husband, especially as her testimony may exculpate her, but potentially implicate her spouse.

"When a defendant moves for a severance, the district court must first determine whether joinder is proper under Federal Rule of Criminal Procedure 8. If joinder is proper, the court still has discretion to order a severance under Federal Rule of Criminal Procedure 14." United States v. Darden, 70 F.3d 1507, 1526 (8th Cir. 1995). These rules are to be liberally construed in favor of joinder. Id.

Here, Defendant does not assert that joinder is improper, she asserts that joinder is prejudicial. Rule 14, Fed. R. Crim. P., provides that a defendant's trial may be severed from the trial of co-defendants "[i]f it appears that a defendant or the government is prejudiced by a joinder." Fed. R. Crim. P. Rule 14. "When joinder is proper under Rule 8, the defendant seeking a severance has the burden to demonstrate how the joint trial prejudiced his or her right to a fair trial." Darden, 70 F.3d at 1527. "There is a preference in the federal system for joint trial of defendants who are indicted together." Zafiro v. United States, 506 U.S. 534, 537 (1993). Severance is to be granted only if there is a "serious risk that a joint trial would compromise a specific trial right of [a properly joined defendant] or prevent the jury from making a reliable judgment about guilt or innocence." Id. at 539. Generally, "persons charged in the same offense should be tried together, especially when proof against them is based upon the same evidence or acts." United States v. Voss, 787 F.2d 393, 401 (8th Cir. 1986).

Further, "it is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." Zafiro, 506 U.S. at 540; accord Layton v. South Dakota, 918 F.2d 739, 744 (8th Cir. 1990). See also United States v. Garrett, 961 F.2d 743, 746 (8th Cir. 1992) (the fact that each defendant has his or her own personal interest at stake is not a sufficient ground to require separate trials). Instead, the moving defendant must make a showing that a jury would be unable to compartmentalize evidence as it relates to each defendant. Zafiro, 506 U.S. at 538. Likewise, severance is not required simply because the evidence against a co-defendant is

13

more damaging, United States v. Pou, 953 F.2d 363, 369 (8th Cir. 1992); the defendant's role in the conspiracy is minor, United States v. Pecina, 956 F.2d 186, 188 (1992); or all of the evidence will not be admissible against all co-defendants, United States v. Sparks, 949 F.2d 1023, 1027 (8th Cir. 1991).

Here, Defendant has failed to demonstrate that the jury would not be able to compartmentalize the evidence against her, and as such, her arguments regarding the quantum of evidence fail. Severance "is not required merely because the evidence against one defendant is more damaging than the evidence against another," or "simply because evidence may be admissible as to one defendant but not as to another." United States v. Roach, 28 F.3d 729, 738 (8th Cir. 1994) (citations omitted). Moreover, Defendant's general allegations of prejudice are not a sufficient basis on which to sever her case for trial. See id. (affirming denial of severance to co-defendant who failed to identify any evidence that would not have been admitted had she been tried alone). In any event, the government may offer evidence of Ms. Binns' own failure to provide accurate information at the same meeting of creditors at which her husband allegedly offered false testimony.

The Court also is not persuaded that severance is required here because Defendants are husband and wife. That co-Defendant Michael Binns may choose not to testify at his own or a joint trial, but may testify at his wife's separate trial, does not provide a basis for severance. In order to support a request for severance on the ground of a co-defendant's possible testimony, a defendant must show that 1) she would call a

14

co-defendant as a witness at a separate trial; 2) the co-defendant would testify at this trial; and 3) the testimony of the co-defendant would be exculpatory. United States v. Voss, 787 F.2d 393, 401 (8th Cir. 1986). Defendant has failed to meet any of these requirements. See Darden, 70 F.3d at 1527 (no abuse of discretion in denial of severance requested on grounds that movant was deprived of co-defendant's testimony, noting that the movant must show that the unavailable testimony would be substantially exculpatory); United States v. Oakie, 12 F.3d 1436, 1441 (8th Cir. 1993) (co-defendant's testimony must be "substantially exculpatory"; it is not enough that the testimony would "tend to contradict a few details of the government's case") (citations omitted).

For similar reasons, the Court is not persuaded by Defendant's speculation that she "may" decide to testify on her own behalf, and that her testimony "may exculpate her, but potentially implicate co-Defendant." The case law cited by Defendant with respect to the spousal privilege does not suggest otherwise. In re Grand Jury, 111 F.3d 1083 (3d Cir. 1997), and In re Malfitano, 633 F.2d 276 (3d Cir. 1980), cited by Defendant, did not involve the issue of severance, but rather simply recognized the general principle that one spouse cannot be compelled to testify against another in the grand jury, absent an appropriate grant of immunity. While the court in United States v. Dobson, 2003 WL 22427984 (E.D. Pa. 2003), did order severance, there the defendant asserted that his testimony would exculpate him but might implicate his co-defendant wife, and the government did not dispute that scenario. Id. at *1. Defendant has made no similar showing here, offering nothing more than speculation. As such, her motion should be

15

denied. See United States v. Blum, 65 F.3d 1436, 1444 (8th Cir. 1995) (no error in failing to grant separate trials of husband and wife where wife claimed that had she testified, she could have been subject to cross-examination using confidential information gained during the marriage and might have been required to testify adversely to her co-defendant husband); United States v. Vaccaro, 816 F.2d 443, 450 (9th Cir. 1987) (no error in failing to sever trial of husband and wife finding "no specific showing has been made that favorable evidence was excluded" because of the choice each had to make), abrogated on other grounds by Huddleston v. United States, 485 U.S. 681 (1988); United States v. Levine, 750 F. Supp. 1433, 1443 (D. Colo. 1990) (denying motion to sever spouses where defendant's assertion of irreparable injury was speculative), aff'd, 970 F.2d 681 (10th Cir. 1992). As such, Defendant's motion should be denied, without prejudice.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Motions of Defendant Michael Binns and Mary Ann Binns to Dismiss the Indictment on grounds of multiplicity [Doc. Nos. 31 and 32] be **denied**, but that the government be required to elect on which count it will proceed.

**IT IS HEREBY ORDERED** that Defendant Mary Ann Binns' Motion for Disclosure of Favorable Material [Doc. No. 33] is **denied**.

**IT IS FURTHER ORDERED** that Defendant Mary Ann Binns' Motion for Early Disclosure of Jencks Materials [Doc. No. 34] is **denied**, except that the government is ordered to direct the investigating agents to preserve their rough notes of interviews.

**IT IS FURTHER RECOMMENDED** that Defendant Mary Ann Binns' Motion for Severance [Doc. No. 35] be **denied, without prejudice**.

The parties are advised that they have eleven (11) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

_____
AUDREY G. FLEISSIG
United States Magistrate Judge

Dated this 22nd day of June, 2006.